**IN THE COURT OF APPEALS OF IOWA**

No. 16-1959
Filed January 25, 2017

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**B.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A father appeals the termination of his parental rights to his one-year-old daughter. **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Cynthia Z. Taylor, of Zamora, Taylor, Woods, & Frederick, Davenport, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

After arriving in the emergency room with broken ribs, two-month-old A.C. was removed from her parents' care. Neither parent admitted or identified the source of the infant's abuse. One year later, the juvenile court terminated their parental rights, noting the father "gets angry at times" during supervised visitation. The father appeals the juvenile court's termination order, alleging the State failed to make reasonable efforts to reunify the family and failed to prove the statutory grounds for termination by clear and convincing evidence.[1] The father also argues termination of his parental rights was not in A.C.'s best interests. After giving the record a fresh look,[2] we reach the same conclusions as the juvenile court and affirm the termination order.

A.C. was born in August 2015. By October 2015, she had already suffered at least two instances of physical abuse. When her parents brought her to the hospital on October 19, 2015, doctors diagnosed three fractures to her right ribs and a possible "greenstick fracture on her left mid-thoracic ribs." Two of the fractures had occurred several days earlier and another fracture showed signs of healing for a longer period. A.C. also had "a lung contusion and some kidney damage." The parents did not explain their delay in seeking medical attention. But the parents confirmed they were A.C.'s only caretakers during the time of her injuries. The parents gave varying explanations for how A.C. got hurt. In one version, they reported she fell from her swing, which in the opinion of the

---

[1] The juvenile court also terminated the mother's parental rights, but she is not a party to this appeal.

[2] We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While we are not bound by the juvenile court's factual findings, we give them considerable weight, especially in assessing the credibility of witnesses. *Id.*

medical professionals could not account for A.C.'s injuries. The doctors ruled out fragile bone syndrome and believed the child's injuries were caused by "compression around the child's midsection." They also believed the injuries were inflicted by a caregiver.

The juvenile court adjudicated A.C. as a child in need of assistance (CINA) in January 2016, based on Iowa Code sections 232.2(6)(b), (c)(2), (e) and (n) (2015). A.C. was placed in family foster care.

The Iowa Department of Human Services (DHS) initially arranged for A.C. to have visitation with her parents four times per week, but the parents missed many visitation sessions. The DHS reduced the visits to three times per week; then two times per week; and by the time of the review hearing in June 2016, the parents had only one visit per week with A.C. After June, the father attended all of the scheduled visitations. The visitations were always fully supervised.

Service providers supervising the visitations recounted incidents where the father became angry in the presence of his young daughter. The DHS case manager testified:

> There were two incidents observed by two different providers that when [the father] was holding [A.C.] and talking with the provider and becoming frustrated that he . . . started squeezing her midsection as he was holding her, and that was quite concerning and the provider interjected and corrected the situation so that didn't continue.

As these incidents suggest, the father's mental-health and anger issues have been an ongoing concern for the DHS. The father, who was twenty-one years old at the time of the termination hearing, had a history of mental illness dating back to his early childhood. The father completed a psychological

evaluation in August 2016. The doctor's diagnostic impressions were "post-traumatic stress disorder and schizoaffective disorder (provisional)." The doctor also believed the father's level of paranoia suggested the presence of some psychotic disorder. Throughout most of the CINA case, the father declined to sign releases allowing the DHS to monitor whether he was addressing his mental-health issues. Not until the end of September 2016, just one week before the termination hearing, did the father finally sign a release. The DHS learned the father attended six therapy sessions after July 2016, but he missed four other appointments. The therapist's notes revealed the father said he was "there to show he is a good dad and that his daughter has a rare bone disease"—an assertion that was inconsistent with the medical findings. By October 2016, the father had not yet started anger-management classes.

The father also had a volatile relationship with A.C.'s mother. The DHS case worker noted he displayed very controlling tendencies when they were together, stepping in to answer questions directed toward the mother. The father admitted he can only be around A.C.'s mother for limited periods of time before he becomes angry and frustrated with the mother.

The State filed a petition for termination of parental rights on September 9, 2016. The juvenile court held a hearing on the petition on October 4 and issued its order terminating the rights of both parents on October 31. The court relied on the grounds in Iowa Code section 232.116(1)(d) and (i) (2016). The court also determined A.C.'s best interests were served by staying in her pre-adoptive home, where her "familial identity" had been forged over nearly eleven months in the care of her foster parents. The father now appeals.

***Reasonable Efforts.*** The father's primary complaint in his petition on appeal is the alleged failure of the DHS to make reasonable efforts to reunify the family. He argues that for several months the DHS placed "artificial and unnecessary barriers" between A.C. and him by declining to offer visits in "the home environment." He contends transportation issues hindered his ability to attend visits with A.C.

The DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). In turn, the parent must ask for additional services before permanency or termination proceedings if they believe the current services to be inadequate. *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005); *see also* Iowa Code § 232.99(3). In this case, the father raised a reasonable-efforts argument at the June 2016 hearing regarding the location of their visitations.

Our supreme court has held the State's duty to make reasonable efforts toward reunification is not "a strict substantive requirement of termination." *C.B.*, 611 N.W.2d at 493. "Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.* While visitation is imperative in achieving reunification, its nature and extent is always controlled by the best interests of the child. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App.1996).

The DHS did not set visitation at the parents' residence for several reasons, not the least of which was the father's concerning behavior, according to testimony at the June 2016 review hearing and the October 2016 termination

hearing. The case manager testified: "There always has been some concern with regard to [the father's] temper and the safety for everybody involved in the visit." In addition, the parents did not have a permanent home of their own and instead stayed with a family friend or other family members. The record also shows the DHS understood the parents' transportation problems and provided bus tokens and fuel cards. Finally, the DHS case worker testified the location of the visitation was not the reason given by the parents for missing many sessions in the early months of the CINA case. After reviewing the record, we agree with the juvenile court's finding that DHS provided reasonable efforts to reunify A.C. with her father.

***Statutory Grounds for Termination.*** The father next contends the State offered insufficient proof under paragraphs (d) and (i) of Iowa Code section 232.116(1).

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Here, we find clear and convincing evidence to support the order under subsection (d), which requires proof of the following elements:

> (1) The court has previously adjudicated the child to be [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents . . . .
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d).

The father does not contest the first element. On the second element, he argues it was improper for the court to conclude the circumstances leading to adjudication continued to exist "when the offering of services was not reasonable for several months." We are not persuaded by his argument. As discussed above, the DHS provided reasonable services, including ample opportunities for the father to interact with A.C., but the father did not make the progress needed to assure a safe return home for his daughter.

As the DHS worker testified, neither parent accepted responsibility for A.C.'s rib injuries or "professed knowledge of what occurred, have shown any willingness or desire to make any changes within their lives to correct any problems that have existed to ensure the safety and well-being of their daughter." The father was slow in addressing his mental health issues, missed numerous therapy sessions, and was not honest with the therapist about A.C.'s injuries. We agree with the juvenile court's determination that despite the offer and receipt of services, the circumstances leading to the CINA adjudication still exist. Accordingly, we affirm termination of the father's rights under subsection (d).

***Best Interests/Six-Month Delay in Permanency.*** The father next argues it is not in A.C.'s best interests to have his parental rights severed. He contends A.C. has been "deprived of a parent to whom she was bonded." The father asks for six more months of services so that he can resume the role of parent for A.C.

Our determination of best interests must track Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting court's use of an unstructured best-interests test). That provision requires us to give primary consideration to the child's safety, the best placement for furthering her long-term

nurturing and growth, and to her physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). In this case, the juvenile court decided the father could not keep A.C. safe from physical abuse and neglect. The court also noted A.C. had received excellent care from her foster family and was integrated into their household. We agree with the juvenile court's conclusion that termination was in A.C.'s best interests under the framework in section 232.116(2).

Moreover, while A.C. enjoyed visits with her father and he played and talked with her, the record does not reveal a close bond that would preclude going forward with termination. *See id.* § 232.116(3)(c). We do not find delaying permanency would be appropriate. *See In re J.B.L.*, 844 N.W.2d 703, 706 (Iowa Ct. App. 2014) (upholding denial of six additional months when record showed parent could not provide safe home for child and showed foster family offered stability and permanency).

**AFFIRMED.**